John F. Anderson *v.* Joseph W. Binford and W. E. Murrell.

JOHN F. ANDERSON *v.* JOSEPH W. BINFORD and W. E. MURRELL.

1. SURETY AND PRINCIPAL. *Judgment by motion. Local jurisdiction.*
   The jurisdiction to take judgment by motion in favor of a
   surety is local and confined to the Court of the county render-
   ing the judgment against his principal, or of the county in
   which a defendant resides.
   Cases cited: Hall *v.* Thompkins, 9 Hum., 592.
   Code cited: §§ 3589, sub. 2, 3632.
   Acts cited: Act of 1801, ch. 15, § 1; Act of 1809, ch. 69, § 1.
2. SAME. *Same. Evidence.* The judgment must pursue the pro-
   visions of the statute, and show *upon its face* that the case
   comes within the statutory requirements, to give the Court
   jurisdiction. Extrinsic evidence can not supply necessary
   facts wanting in the judgment.
   Case cited: Cannon *v.* Wood, 2 Sneed, 177.
3. COURT OF EQUITY. *Party seeking equity must do equity.* Osburne
   and Anderson were partners in the tanning business. Osburne
   executed a note for $2,000, in the name of Osburne & Anderson,
   for hides, and procured Binford to sign it as security. The
   holder recovered judgment against Binford, and Binford took
   judgment by motion against Osburne & Anderson. Anderson
   filed ·a bill to enjoin the execution, upon the ground that he
   owed Binford nothing, and Binford was not surety for him.
   The judgment by motion was void for want of proper recitals.
   But the proof showed that Osburn had given Anderson $2,000
   with which to pay this debt.
   *Held,* That though the pleadings did not look to relief from this
   source, yet, as the parties were all before the Court, it would
   compel the complainant, as a condition to the relief he sought,
   to pay to Binford the money so received by him, with interest,
   at the value of United States currency, when received.

FROM FRANKLIN.

BURTON, Special J., delivered the opinion of the
Court.

NOTE.—After careful search, we have been unable to find the
records in this and the following three cases, and for this reason
the names of counsel appearing and Court have been omitted.

John F. Anderson *v.* Joseph W. Binford and W. E. Murrell.

On the 23d day of November, 1865, the defendant, Joseph W. Binford, obtained by motion, in the Circuit Court of Rutherford County, a judgment against the complainant (John F. Anderson) and one L. B. Osborne, in the sum of $2,361.66 and costs of suit. A writ of *fieri facias* issued on said judgment to Franklin County, which came to the hands of the defendant (W. E. Murrell), and was by him levied upon the property of the complainant (Anderson), who thereupon filed his bill in the Chancery Court of said county for a perpetual injunction against the execution of said judgment.

The grounds upon which this judgment by motion was rendered are as follows:

On the 17th day of October, 1862, Osborne executed and delivered to one J. A. Collier, a promissory note for $2,000, payable at thirty days, signed Osborne & Anderson. Binford, as is disclosed in the Record, signed the note as surety, though on the face of the note he appears as joint maker. The note was signed by Binford at the request of Osborne. Collier, as appears from the answer of defendant (Binford), sued Binford alone in the Circuit Court of Rutherford County, and on the same day on which the judgment by motion was rendered obtained judgment against Binford in the same amount; and thereupon judgment was rendered over against Anderson and Osborne, and in favor of Binford as surety, assuming that the complainant (Anderson) was partner of Binford in a "tan-yard," and was so liable

over to Binford as surety of the firm of Osborne & Anderson.

Complainant alleges in his bill that Osborne had no authority to sign his name to the note or to bind him thereby; that the judgment of the Circuit Court was rendered against him without notice, and that therefore the Court had no jurisdiction to render a judgment against him. The bill does not expressly impugn the judgment on the ground that it is wanting in any of the statutory requirements necessary to give to the Courts summary jurisdiction. But the defendant files a copy of the judgment by motion with his answer, as an exhibit, and asks that it be taken and looked to as part of his answer. And this brings us necessarily to consider the validity of this judgment by motion. Chapter 14, Article 1 of the Code, contains the general provisions regulating summary proceedings. Section 3589 is in the words following:

"The motion *shall* be made unless in cases where otherwise provided for by the Code, as follows: . ." Sub-section 1 relates to a motion against an officer for an official default. But Sub-section 2 is in these words: "When a motion is by a surety, it *may be made* in the county in which judgment has been rendered against him, or in the county in which any one of defendants reside." Article 7 of the same chapter, Section 3632, is: "Motions under this article may be made in any Court or before any Justice of the Peace having cognizance of the *amount.*" And

John F. Anderson *v.* Joseph W. Binford and W. E. Murrell.

this Article treats exclusively of motions in favor of sureties, stayors and accommodation endorsers. When these sections are collated, it does raise a question as to whether the words of the first quoted section, restricting the motion to the Court in which the judgment was rendered, or of the county in which a defendant resides are enlarged by the words of the last quoted section so as to give jurisdiction to any Court having cognizance of the *amount*, which would of course include the Circuit Court of any county in the State.

The case of *Hall* v. *Thompkins & Rutherford*, 9 Hump., 592, was decided under the Acts of 1801, chap. 15, § 1, and of 1809, chap. 69, § 1, which are very similar in their language to the sections of the Code we are considering. The first named Act provides for the case where the surety has paid the judgment, and gives him a remedy in the Court where the judgment has been entered against him, or within any other Court of competent jurisdiction in the State upon the production of a copy of the Record or judgment legally authenticated. The Act of 1809 makes the same provision in favor of a surety against whom a judgment has been rendered without payment, and in the same words, except that this may be obtained before any jurisdiction having "cognizance" thereof. In the case above referred to, it was held that these Acts authorized the judgment by motion in favor of the surety in the Circuit Court of any county in the State.

This authority would be controlling with us were it not for the fact that the Acts of Assembly upon which it was decided do not contain the material words restricting the jurisdiction to the Court where the judgment is rendered against the surety, *or of the county in which one of the defendants resides.* It is also observable that while the Act of 1809 authorized the judgment before any jurisdiction having cognizance thereof, Section 3632 gives the motion in any Court or before any Justice having cognizance of the *amount.* The leading object of this last section, we think, is not to confer jurisdiction upon the *Circuit Courts,* but to give jurisdiction by motion to Justices of the Peace. Giving, then, a fair interpretation to all of these several provisions of the Code, we think that the local jurisdiction to render judgment by motion in favor of a surety against whom a judgment is rendered, is confined to the Court of the county so rendering the judgment, or of the county in which a defendant resides.

In the construction of these statutes it has constantly been said by the Courts of Tennessee that the remedy being without notice, summary and contrary to the course of the common law, the judgment must pursue the provisions of the statute, and the proceeding upon its face must show that the case comes within the statutory requirements, or the Court will be without jurisdiction. Tested by these requirements, the judgment in this Record is void. It recites that it appeared to the Court that John A. Collier "has

this day obtained a judgment against the said J. W. Binford on said note;" but it nowhere appears in said judgment in what Court Collier had obtained the judgment, nor does it appear that either of the defendants, Anderson or Osborne, resided in the County of Rutherford. To be sure there is a strong presumption that Collier's judgment was obtained in Rutherford County, and the proof *aliunde* shows that such was the fact, but the judgment does not recite or assume either of the facts necessary to give the Circuit Court of Rutherford County jurisdiction to render this judgment. And the judgment can not be aided by extrinsic proof. 2 Sneed, 177.

2. This judgment, then, being void, does not fix and ascertain the liability of Anderson to Binford, and therefore the injunction should be made perpetual. But this does not dispose of all the questions upon which the parties are at issue in this Record. In addition to the allegations already quoted from the bill, complainant alleges:

"That he was not indebted to the said Binford in any sum whatever, nor did he ever have a business transaction with him in his life, nor was the said Binford ever bound for complainant as surety or otherwise, nor was any one authorized by complainant to bind him in any manner, in any business transaction with the said Binford."

It is true, literally, that Anderson, in person, had nothing to do with this contract about the leather, but it is abundantly shown that for a considerable

period, embracing the time of the execution of this note, Anderson & Osburne were partners in the ownership and operation of a tan-yard at Stevenson. And the proof is that this note of $2,000 was in part the consideration of a large lot of "partially tanned leather," bought by Osburne of Collier in the partnership name and on the partnership account.

Binford says in his answer that he knew that Anderson was a member of the firm, and that he was solvent; that it was on this account that he became the surety of the firm, and that he would not otherwise have done so. The terms of the partnership between Osborn and Anderson were not reduced to writing, and they, in their depositions, differ very materially as to the positive stipulations between them.

Anderson says that neither party was to sign the partnership name to any note, while Osburne proves that Anderson expressly told him to sign the firm name in all transactions about the partnership affairs. Of course these private stipulations between themselves would not affect contracts made with persons dealing with them in good faith, and in ignorance of such restrictions. While it is true that a strictly commercial partnership authorizes either partner to bind the firm by signing or endorsing commercial paper, the authorties seem to leave it doubtful whether an association in business of the kind we are dealing with does give implied authority to each member of the firm to execute negotiable paper in the firm name.

1 Hum., 23. And we prefer to rest this case upon a ground free from that difficulty.

One fact in relation to this note is distinctly proven by Osborne. And that is, that he gave Anderson $2,000 to pay this note to Collier. It is true that Anderson, in general terms, denies all knowledge of the existence of this note until after the execution was issued against him. But although his deposition is carefully taken in the case, he does not deny the specific statement of Osborne that he paid him the $2,000. We therefore conclude that the fact is as stated by Osborne.

We have seen that Binford can not hold Anderson responsible on the footing of the judgment by motion against him, but it does appear that Binford has paid, or satisfied in some way to Collier, the full amount of the judgment rendered against him on the original note, and we have just seen that Anderson has had for years the money of Osborne, (who was undeniably Binford's principal), in his hands to pay this very note. And certainly this raises the strongest equity in favor of Binford to have the money applied for his re-imbursement.

The pleadings are not framed with a view to this measure of relief, but we have both the parties before us, and think we have the right in this case to require Anderson, as a condition of the relief sought by him, to do equity by accounting to Binford directly for the money he received from Osborne. The proof is that he received it in Con-

federàte money.   And he must account for the value of it in United States currency, at the time he received it, on the —— day of ———, 1862, with interest thereon from that time.

It will be further seen from the decree of the Chancellor in this case, that on dissolution of the injunction about $900 has been paid, or levied out of the property of Anderson, for which sum the Chancellor gave Anderson a decree against Binford and his securities.   The decree of the Chancellor must be modified in this respect, and the $900 will remain in Binford's hands until the account of the value of the Confederate money is taken.

The cause is remanded to the Chancery Court to take the account herein directed.   Let a decree be entered according to the principles of this opinion.